Julia Campins (Cal. Bar No. 238023)
Campins Benham-Baker, P.C.
935 Moraga Road, Suite 200
Lafayette, CA 94549
(415) 373-5333
julia@campinsbenhambaker.com

Alexander S. Elson* (*pro hac vice forthcoming*)
Robyn K. Bitner* (*pro hac vice forthcoming*)
National Student Legal Defense Network
1015 15th Street N.W., Suite 600
Washington, D.C. 20005
alex@nsldn.org
robyn@nsldn.org
(202) 734-7495

*Member of New York Bar only;
practicing in the District of Columbia
under supervision of members of the
D.C. Bar while D.C. Bar application is pending.

*Attorneys for Plaintiff Housing and Economic Rights Advocates*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOUSING AND ECONOMIC RIGHTS ADVOCATES, <br><br> Plaintiff, <br><br> vs. <br><br> ELISABETH DEVOS, *in her official capacity as Secretary of Education*, and UNITED STATES DEPARTMENT OF EDUCATION, <br><br> Defendants. | Case No.: 18-cv-06854 <br><br> COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF <br><br> [Administrative Procedure Act Case] |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                                - 1 -

**INTRODUCTION**

1. Plaintiff Housing and Economic Rights Advocates ("HERA") brings this action against Secretary of Education Elisabeth DeVos ("Secretary") in her official capacity and the United States Department of Education ("ED" or the "Department") (collectively, the "Defendants") seeking declaratory and injunctive relief due to the Defendants' failure to grant automatic closed school discharges to qualifying student loan borrowers. *See* 81 Fed. Reg. 75,926, 76,078-82 (Nov. 1, 2016) (codified at 34 C.F.R. §§ 674.33(g)(3), 682.402(d)(8), 685.214(c)(2)) (hereinafter the "Automatic Provision").

2. The Department designed its final 2016 Borrower Defense Rule (hereinafter the "2016 Rule") to protect federal student loan borrowers from "misleading, deceitful, and predatory practices" at institutions that participate in Title IV federal student aid programs. 81 Fed. Reg. at 75,926.

3. As part of the 2016 Rule, the Automatic Provision provides that, with respect to schools that closed on or after November 1, 2013, the Department will automatically discharge the loans of all eligible borrowers who do not subsequently re-enroll in another Title IV-eligible institution within three years. 81 Fed. Reg. at 76,078-82. Implementation of this provision is "not discretionary." 81 Fed. Reg. at 76,038.

4. Tens of thousands of borrowers who attended approximately 1,400 campuses that closed from November 1, 2013 until three years prior to the filing of this Complaint are presently entitled to have their federal student loans discharged without submitting an application. "Closed School Search Page," U.S. Dep't of Educ., https://www2.ed.gov/offices/OSFAP/PEPS/docs/closedschoolsearch.xlsx (last updated Nov. 2, 2018).

5. Many of these student loan borrowers attended for-profit colleges that closed abruptly following state or federal government investigations that revealed that the closed schools had deceived students into obtaining federal student loan funds, while simultaneously failing to deliver those students an education of value.

6. In just the last few years, for example, widespread misconduct at Corinthian

Colleges, Inc. ("Corinthian"), ITT Technical Institute, American Career Institute, and Westwood College led to abrupt closures.

7. In such cases, many schools also frequently file for bankruptcy, leaving students deeply indebted with no source of redress.

8. Students affected by these closures are often adults with limited economic means. They are the first in their family to pursue higher education and include people of color, immigrants, non-native English speakers, single mothers, veterans, and the formerly incarcerated.

9. Automatic closed school discharge is especially critical for these borrowers. Students who do not complete their educational programs are among the most likely to default on their student loans, leaving them worse off than before they enrolled: stuck with a continually increasing debt load, no diploma, and bleak career prospects.

10. These problems are particularly pernicious for students who attended for-profit colleges. For example, in 2009, the Department found that thirty-one percent of students who had enrolled at a for-profit college, but who did not complete their program of study, had accumulated federal loans equal to or exceeding their annual income. *See* Christina Cheng Wei & Laura Horn, "Stats in Brief: Federal Student Loan Debt Burden of Noncompleters," NCES 2013-155, at 5 (Apr. 2013), *available at:* http://nces.ed.gov/pubs2013/2013155.pdf. For these borrowers, a discharge of their federal student loans will have immense financial benefits.

11. Unfortunately, few eligible student loan borrowers apply for closed school discharges because they are unaware of this type of relief or their possible eligibility to receive it.

12. Motivated to solve this problem, the Department created the Automatic Provision to mechanically discharge the loans of eligible borrowers.

13. Following the change in administration after the 2016 election, however, the Department has unabashedly and intentionally refused to implement the Automatic Provision. Upon information and belief, the Department continues to collect on federal student loans that it is required by law to discharge.

14. The Department's conduct in this regard is a clear violation of the Administrative Procedure Act and its own regulations, insofar as the Department has unlawfully withheld non-discretionary agency actions.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and 28 U.S.C. § 1331.

16. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e)(1) because a substantial part of the events giving rise to the claim occurred in this district and Plaintiff resides here.

## INTRADISTRICT ASSIGNMENT

17. Assignment to the San Francisco/Oakland Division is appropriate because a substantial part of the events or omissions that give rise to the Plaintiff's claims occurred in this division of the district.

## PARTIES

18. Plaintiff HERA is a California statewide, not-for-profit legal service and advocacy organization dedicated to helping Californians—particularly those most vulnerable—build a safe, sound financial future, free of discrimination and economic abuses, in all aspects of household financial concerns. HERA provides free legal services, consumer workshops, training for professionals, and community organizing support, while also engaging in policy work locally, statewide, and nationally. HERA's principal place of business is located in Oakland, California.

19. Defendant Elisabeth DeVos is the Secretary of Education and is charged with the supervision and management of all decisions and actions within the United States Department of Education. Plaintiff sues Secretary DeVos in her official capacity.

20. Defendant ED is a department of the executive branch of the United States government headquartered in Washington, D.C., and an agency of the United States within the meaning of 5 U.S.C. § 552(f)(1). ED, in its current form, was created by the Department of

Education Organization Act of 1979, 20 U.S.C. § 3401, *et seq.*

## BACKGROUND

**General Overview of the Closed School Discharge Regulations**

21. The Higher Education Act ("HEA") requires the Secretary to discharge a specified loan if the borrower was unable to complete the educational program due to the school's closure. 20 U.S.C. § 1087(c)(1). Parent PLUS loan borrowers are also eligible for a closed school discharge if the student on whose behalf the loan was taken out qualifies. *See* 34 C.F.R. §§ 682.402(d)(1)(i), 685.214(a)(1).

22. Under the Department's regulations, a school's "closure date" is defined as the date that the school ceases to provide educational instruction in all of its programs, as determined by the Secretary. 34 C.F.R. §§ 674.33(g)(1)(ii)(A), 682.402(d)(1)(ii)(A), 685.214(a)(2)(i).

23. The Department's regulations also provide for a discharge if a borrower withdrew from a school not more than 120 days prior to the school's closure. 34 C.F.R. §§ 674.33(g)(4)(i)(B), 682.402(d)(1)(i), 685.214(c)(1)(i)(B). The Secretary may extend this 120-day period if exceptional circumstances exist. *See id.* §§ 674.33(g)(4)(i)(B), 682.402(d)(1)(i), 685.214(c)(1)(i)(b).

24. Students are barred from receiving a discharge under the regulations, however, if they complete a program through a "teach-out" agreement or complete a program at another school through the transfer of one or more credits from the closed school. *See* 34 C.F.R. §§ 674.33(g)(4)(i)(C), 682.402(d)(3)(ii)(c), 685.214(c)(1)(i)(C).

25. A written application is typically required in order to receive a closed school discharge. *See* 34 C.F.R. §§ 674.33(g)(4), 682.402(d)(3), 685.214(c)(1).

26. Prior to the promulgation of the Automatic Provision, however, the Department's regulations already permitted the Department and guaranty agencies to grant closed school discharges without a written application in certain circumstances.[1] For example, the Department

---

[1] The Secretary retains this discretion to grant closed school discharges without an application today, but only with respect to those discharges that do not meet the requirements of the Automatic Provision promulgated in 2016. As noted previously, whether to discharge loans

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 5 -

may discharge a Direct loan without an application if the Department determines, based on information already in its possession, that the borrower qualifies. *See* 34 C.F.R. § 685.214(c)(2). For loans made under the Federal Family Education Loan ("FFEL") program, a discharge may be granted without an application if: (1) the borrower received a similar discharge of a Direct or Perkins loan; or (2) the Department or guaranty agency determines that the borrower qualifies for a discharge based on information in the Secretary or guaranty agency's possession. *See* 34 C.F.R. § 682.402(d)(8). There are similar provisions for Perkins loans. *See* 34 C.F.R. § 674.33(g)(3).

27. When a borrower receives a closed school discharge, the borrower is no longer obligated to repay the loan or any of its associated charges or costs. *See* 34 C.F.R. §§ 674.33(g)(2)(i), 682.402(d)(2)(i), 685.214(b)(1). That includes the loan principal, accrued interest, and collection costs, among others.

28. In addition, the borrower is reimbursed for all amounts paid to date on the loan, whether those payments were made voluntarily or involuntarily, such as through tax refund offset or wage garnishment. *See* 34 C.F.R. §§ 674.33(g)(2)(ii), 682.402(d)(2)(ii), 685.214(b)(2).

29. Furthermore, the borrower is no longer regarded as in default and is immediately eligible for new loans and grants under Title IV. *See* 34 C.F.R. §§ 674.33(g)(2)(iii), 682.402(d)(2)(iii), 685.214(b)(3). This includes restoring Pell grant eligibility to borrowers who have successfully obtained closed school discharges. *See* Jeff Baker, Dir., Policy Liaison and Implementation, Fed. Student Aid, U.S. Dep't of Educ., "Federal Pell Grant Restoration for Students who Attended Closed Schools" (Dec. 21, 2016), *available at*: https://ifap.ed.gov/eannouncements/122116FedPellGrantRestoratforStudentsWhoAttendClosedSchools.html.

30. The Department's regulations also require that any closed school discharges be reported to all credit reporting agencies "so as to delete all adverse credit history assigned to the loan." *See* 34 C.F.R. §§ 682.402(d)(2)(iv), 685.214(b)(4); *see also id.* § 674.33(g)(2)(iv).

---

for eligible borrowers under the Automatic Provision is "not discretionary." 81 Fed. Reg. at 76,038.

31. Once a closed school discharge is granted, the student loan borrower transfers his or her rights to seek a loan refund from the closed school to the Secretary and agrees to cooperate with the Secretary in any enforcement actions brought against the closed school. *See* 34 C.F.R. §§ 674.33(g)(6)-(7), 682.402(d)(4)-(5), 685.214(d)-(e).

**The Automatic Closed School Discharge Provision in the 2016 Borrower Defense Rule**

32. On November 1, 2016, the Department duly promulgated the Automatic Provision as part of the 2016 Rule.

33. The Automatic Provision provides that the Department (or guaranty agency) *must* grant automatic discharges to students whose schools closed on or after November 1, 2013, and who do not re-enroll at another Title IV-eligible institution within three years of their school's closure date. *See* 81 Fed. Reg. at 75,926, 76,078, 76,080–81 (Nov. 1, 2016) (to be codified at 34 C.F.R. §§ 674.33(g)(3), 682.402(d)(8), 685.214(c)(2)).

34. The Automatic Provision was justified in part by the Department's 2016 analysis, which concluded that nearly half of all eligible borrowers do not apply for the closed school discharge to which they are legally entitled. 81 Fed. Reg. at 76,059.

35. The Department further summarized its justification for the Automatic Provision in the following way:

> The Department is concerned that some borrowers are unaware that they may be eligible for student loan debt relief. In some instances, the closing school might inform borrowers of the option to complete their program through a teach-out, but fail to advise them of the option for a closed school discharge. . . . Under the final regulations, borrowers will receive accurate and complete information with regard to their eligibility for a closed school discharge earlier in the process, and may receive automatic discharges if they do not subsequently re-enroll at another school.

*See* Press Release, U.S. Dep't of Educ., "Borrower Defense Final Regulations: Summary of Major Provisions," *available at:* https://www2.ed.gov/documents/press-releases/borrower-defense-final-regulations.pdf.

36. Recognizing the importance and urgency of this issue for student loan borrowers, then-Secretary John King, Jr. chose, pursuant to his authority under Section 482(c) of the HEA, to designate the Automatic Provision for early implementation prior to the 2016 Rule's July 1, 2017 effective date.  81 Fed. Reg. at 75,928.

37. The Department committed itself to "publish[ing] a separate Federal Register notice to announce this implementation date."  *Id.*

38. Such an announcement never took place, however, as the Department took no action to implement the Automatic Provision early.

39. Instead, the Department expressly delayed implementation of the 2016 Rule—including the Automatic Provision—on three separate occasions (collectively, the "Delay Rules").  First, on June 14, 2017, the Department announced an indefinite delay of the 2016 Rule due to pending litigation.  82 Fed. Reg. 27,621 (June 16, 2017).  Next, on October 24, 2017, the Department announced an Interim Final Rule to further delay the 2016 Rule until July 1, 2018.  82 Fed. Reg. 49,114 (Oct. 24, 2017).  Finally, on February 14, 2018, the Department announced a third delay of the 2016 Rule, this time until July 1, 2019.  83 Fed. Reg. 6,459 (Feb. 14, 2018).

40. On September 12, 2018, the United States District Court for the District of Columbia held that the Department's Delay Rules violated the HEA and were arbitrary and capricious under the APA.  *Bauer v. DeVos*, No. 17-cv-1330 RDM, 2018 WL 4353656 (D.D.C. Sept. 12, 2018) (memorandum opinion and order).  Five days later, the Court entered an order vacating the Department's Delay Rules, but stayed that vacatur for thirty days to give the Department an opportunity to cure any deficiencies.  *Bauer v. DeVos*, No. 17-cv-1330 RDM, 2018 WL 4483783 (D.D.C. Sept. 17, 2018) (order).  On October 16, 2018—after the Department made no attempt to cure the Delay Rules—the Automatic Provision took effect.

41. Through its publication of the Delay Rules, as well through its more general failures to act, the Department has unlawfully failed to implement the Automatic Provision on its effective date of July 1, 2017, as it was required to do.

**School Closures Since November 1, 2013**

42. Since November 1, 2013, nearly 3,600 school campuses have ceased to offer educational instruction nationwide. "Closed School Search Page," U.S. Dep't of Educ., https://www2.ed.gov/offices/OSFAP/PEPS/docs/closedschoolsearch.xlsx (last updated Nov. 2, 2018).

43. Nearly 475 of those school campuses closed between November 1, 2013 and July 1, 2014. *Id.* Pursuant to the Automatic Provision, then, students who attended those campuses became eligible for automatic closed school discharge relief as early as July 1, 2017— the date the Automatic Provision *should* have taken effect, even without the Department's commitment to early implementation.

44. With respect to institutions in California, *i.e.*, where HERA is located, nearly 500 school campuses have ceased to offer educational instruction since November 1, 2013. *Id.*

45. Of that list, more than 160 California schools include former students who may already be eligible for automatic closed school discharge relief under the Automatic Provision.

46. That includes students who attended California campuses that closed at the University of La Verne, Wyotech, Carrington College, Pacific Union College, California State University, Coleman College, Bridges Academy of Beauty, Concordia University, Career Colleges of America, Brooks Institute, Institute of Technology, San Jose State University, the University of Phoenix, Diversified Vocational College, Brandman University, California Institute of Integral Studies, Marinello School of Beauty, Dominican University of California, Community Enhancement Services, Casa Loma College, Alliant International University, San Diego College, Center for Employment Training, Community Christian College, Park University, Bard College, Bryman College, Biohealth College, Twin Rivers Adult School, California College of Vocational Careers, Anthem College, Franciscan School of Theology, Alliant International University, International Polytechnic Institute, Chicago School of Professional Psychology, ITT Technical Institute, Hollywood Beauty College, Evergreen Valley College, Westwood College, DeVry University, Central Nursing College, Loma Linda University, the National Graduate School of Quality Management, Le Cordon Bleu College of

Culinary Arts, ICDC College, Institute of Technology, Loyola Marymount University, Tulare Beauty College, Newschool of Architecture and Design, Advanced Career Institute, UEI College, Intercoast Colleges, Video Symphony Entertaining, Manchester Beauty College, Madera Beauty College, Everest College, Heald College, University of Michigan, Azusa Pacific University, National Hispanic University, California State Polytechnic University, Four-D College, Tri-Community Adult Education, Point Loma Nazarene University, Charter College, Preferred College of Nursing, New York Film Academy, and Sage College.

47. Students who attended an additional 325 closed California campuses will also become eligible for relief under the Automatic Provision within the next three years.

48. These students are potential clients of HERA.

**HERA's Representation of and Outreach to California Borrowers who Should Have Received Discharges Under the Automatic Provision**

49. HERA is a statewide non-profit legal services organization focused on consumer debt and economic justice. HERA provides legal assistance, advice, education, and advocacy on a wide range of related issues, including: student loans, medical, and other types of household debt; unfair debt collection and credit reporting; predatory lending; and foreclosure prevention.

50. The Department's failure to implement the Automatic Provision has impeded HERA's mission to assist clients and potential clients with issues surrounding student debt, especially those who have been victimized by predatory student lending practices at for-profit colleges.

51. The Department's failure to implement the Automatic Provision has also caused HERA to divert its limited resources from other mission-critical efforts toward the representation, outreach, and education of borrowers who, but for the Department's failure to implement the Automatic Provision, would have already received automatic closed school discharges and would not have required HERA's assistance.

52. In addition to providing consumer workshops and trainings in its areas of expertise, HERA typically receives between 150-200 individual requests for assistance each month. Like many legal services non-profits, HERA must balance priorities and its limited

1  resources in order to help under-resourced consumers with pressing needs.  Any HERA attorney
2  time spent assisting an individual necessarily decreases the time that the attorney can spend
3  helping another or advancing its clients' interests through policy advocacy or affirmative
4  litigation.  For example, helping a student loan borrower with a closed school discharge
5  application—as HERA has been forced to do as a result of the Department's unlawful failure to
6  implement the Automatic Provision—negatively impacts the time and resources HERA has to
7  help other students seeking a more complicated discharge based on total and permanent
8  disability or false certification.

9         53.     HERA currently employs eight attorneys and one paralegal.

10         54.     Of HERA's eight attorneys, two—a managing attorney and a staff attorney—are
11  primarily responsible for the organization's work on student debt, including private and federal
12  loan issues and predatory student lending practices at for-profit colleges.

13         55.     HERA's two student debt-focused attorneys also participate in HERA's other
14  practice areas.  For example, they represent and advise consumers on medical debts, collection
15  actions, high-cost small dollar loans, and credit reporting issues.  With respect to student debt
16  and predatory student lending, HERA's work includes providing legal services to student loan
17  borrowers, regulatory and policy work related to predatory student lending, and community
18  outreach and education to students struggling with repayment of their student loans.

19         56.     HERA's outreach activities include regular community-based workshops for low
20  and moderate-income student loan borrowers, developing informational handouts for past and
21  prospective students, and providing information through its website and social media accounts.

22         57.     HERA's student loan policy efforts include federal and state legislative and
23  regulatory advocacy.  On the issue of school closure, for example, HERA's managing attorney
24  served as a negotiator on behalf of national legal services organizations representing students in
25  the Department's 2016 federal rulemaking on borrower defense, which resulted in the creation of
26  the Automatic Provision.  The same attorney also collaborated on the omnibus legal aid
27  community comment regarding the Department's 2018 proposed borrower defense regulation,
28  including arguing against the Department's proposal to repeal the Automatic Provision.  Another

HERA attorney serves on the advisory committee to the California Bureau of Private Post-Secondary Education, the state agency that oversees for-profit higher education institutions and administers the Student Tuition Recovery Fund for students affected by school closure.

58. HERA has spent, and will continue to spend, substantial resources advising and representing student borrowers who attended failing or closed for-profit schools, including students who attended California campuses of the now-defunct Corinthian prior to its closure in 2015. After the campuses' closures, the California Attorney General listed (and continues to list) HERA on its website as one of several organizations providing free legal services regarding student debt issues to former Corinthian students. *See* Xavier Becerra, Attorney Gen., "Heald College - Hayward," California Dep't of Justice, https://oag.ca.gov/consumers/general/corinthian-colleges/hayward. This, in addition to referrals from other community-based organizations and HERA's own outreach on student loan issues, has resulted in a dramatic increase in the number of student loan-related calls to HERA's intake line over the past three to four years.

59. From 2015-2016, for example, HERA conducted open workshops for more than 300 former Corinthian students, helping borrowers to submit closed school, borrower defense, and false certification discharge applications. HERA also represented students who were initially denied discharge to successfully appeal their denials through direct advocacy with the Department and/or its servicers. A number of these former students have continued to contact HERA for updates on their long-delayed applications for relief and have also referred friends and classmates to HERA for assistance.

60. HERA is also co-counsel in a nationwide class action lawsuit against the Department for unlawfully denying full borrower defense relief to tens of thousands of former Corinthian students. *See generally Manriquez v. DeVos,* No. 17-cv-07210 (N.D. Cal. 2017). Some members of this class are likely entitled to relief under the Automatic Provision.

61. Since July 1, 2017—the date the Automatic Provision should have been implemented—HERA has devoted substantial time and resources on outreach, education, and representation of students who would have received automatic loan discharges but for the

Department's illegal delays.

62. HERA also continues to receive requests from former Corinthian students, as well as students from other closed schools such as the Brooks Institute, inquiring about their right to a discharge. Former students who contact HERA for help generally lack information about their rights with respect to their student loans. As a result, HERA must individually evaluate the facts in each case in order to provide assistance.

63. For example, in July 2018, HERA assisted a former Corinthian borrower who, but for the Department's failure to implement the Automatic Provision, would have received relief under the Automatic Provision. HERA conducted an intake for this borrower, advised them on how to get their transcript from the state licensing agency, met with them individually, counseled them on their options, and helped them submit an individually-signed closed school discharge application. Though HERA believes that this discharge should have been granted automatically, it will continue to help Automatic Provision-eligible borrowers to submit individual applications in order to prevent further harm occurring to them as a result of the outstanding debt.

64. Due to the concern that eligible borrowers will not be granted automatic relief because of the Department's failure to implement the Automatic Provision, HERA is conducting outreach to former students of closed schools who are unaware of their right to a discharge.

65. In the past month, for example, HERA has posted a specific advisory through its social media accounts to Automatic Provision-eligible borrowers to ensure that they apply for closed school discharges individually. This advisory included links to the closed school discharge application with instructions on how to complete it. HERA has also offered direct advice and assistance to those who need it. HERA has researched and is conducting outreach on social media platforms that provide information for students who attended closed schools in order to reach additional borrowers who may not yet be aware of their rights.

66. As a result of these outreach efforts, HERA anticipates an increase in student borrower requests for assistance regarding closed school discharges.

67. Each of the activities described above has taken additional time and financial resources because of the Department's failure to implement the Automatic Provision. Had the

Department implemented the Automatic Provision, HERA would have spent fewer resources on these activities and would have been able to allocate these resources to other activities central to HERA's mission.

68. Put differently, the Department's failure to implement the Automatic Provision has forced HERA to change its behavior with respect to its allocation of staffing, time, and financial resources.

69. HERA anticipates that this work will continue until the Automatic Provision is fully implemented.

70. As a result, the Department's failure to implement the Automatic Provision has impaired HERA's work on other aspects of its organizational mission, such as representation and outreach related to victims of abusive medical debt and auto and small dollar loans.

71. The Department's failure to grant automatic discharges, as it is required to do by law, harms HERA because the Department's failure has forced HERA to divert resources from other critical efforts in order to help eligible borrowers obtain closed school discharge relief.

## COUNT I

**Failure to Implement the Automatic Provision**

**Violation of APA, 5 U.S.C. § 706(1) – Unlawfully Withheld Agency Action**

72. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

73. Since July 1, 2017, Defendants have unlawfully withheld implementation of the Automatic Provision to eligible student loan borrowers in violation of the APA, 5 U.S.C. § 706(1). Although Defendants have attempted, at various times, to delay the implementation of this Provision, those attempts have been deemed unlawful and vacated. The Department therefore has no justification for its unlawful withholding of the implementation of the Automatic Provision.

74. Upon information and belief, the Department has not implemented the Automatic Provision and continues to collect on federal student loans that it is required by law to discharge.

75. The Department is therefore unlawfully withholding automatic closed school

discharge relief from eligible borrowers.

76. The Department's unlawful withholding of automatic closed school discharge relief injured HERA, and will continue to injure HERA, until the Department fully implements the Automatic Provision.

77. The Court should compel the Department to immediately implement the Automatic Provision and grant closed school discharges to all eligible borrowers.

## REQUESTED RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter a declaration that the Defendants have unlawfully withheld agency action, in violation of the APA;

B. Order Defendants to implement the Automatic Provision immediately;

C. Declare that Defendants are obligated to discharge the student loans of all eligible student loan borrowers under the Automatic Provision;

D. Retain jurisdiction of this matter until Defendants have fulfilled their legal and Court-ordered obligations, as set forth in this Complaint and any subsequent orders of this Court;

E. Award Plaintiff reasonable fees, expenses, costs, and disbursements, including attorneys' fees associated with this litigation under the Equal Access to Justice Act, 28 U.S.C. § 2412; *and*

F. Grant such further relief as the Court may deem just and proper.

Respectfully Submitted,

Dated: November 13, 2018

/s/ Julia Campins
Julia Campins (Cal. Bar No. 238023)
Campins Benham-Baker, P.C.
935 Moraga Road, Suite 200
Lafayette, CA 94549
(415) 373-5333
julia@campinsbenhambaker.com

Alexander S. Elson* (*pro hac vice forthcoming*)
Robyn K. Bitner* (*pro hac vice forthcoming*)
National Student Legal Defense Network
1015 15th Street N.W., Suite 600
Washington, D.C. 20005
alex@nsldn.org
robyn@nsldn.org
(202) 734-7495

*Member of New York Bar only; practicing in the District of Columbia under supervision of members of the D.C. Bar while D.C. Bar application is pending.

*Attorneys for Plaintiff Housing and Economic Rights Advocates*